# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) CIVIL ACTION NO.: 13-00298-KD-N<br>) |
| GREAVES-WALKER, INC. d/b/a GLEEM'S CARPET ONE, CARPET ONE'S FLOORING WAREHOUSE and GLEEM COLOR AND DESIGN; JO ANN AGOSTINELLI; and EDWARD AGOSTINELLI; | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## ORDER

This action is before the Court on the motion for default judgment filed by plaintiff Companion Property and Casualty Insurance Company (Companion). (Doc. 15) Upon consideration, and for the reasons set forth herein, the motion is **DENIED** as to Count One and Count Two and **GRANTED** as to Three.

I. <u>Background and procedural history</u>

In 2009, defendant Greaves-Walker, Inc., an Alabama corporation, with its principal place of business in Mobile, Alabama, entered into a subcontract in the amount of $331,000.00 with general contactor The LaSalle Group, Inc. whose address is in Clanton, Michigan, for work to be done at the "Double Dining Facility - Ft. Leonard Wood, Mo. . . ." (Doc. 1) Companion issued subcontract payment and performance bonds for the project naming Greaves-Walker as Principal, Companion as Surety, and LaSalle as the Obligee. Defendants Greaves-Walker, Edward Agostinelli and JoAnn Agostinelli executed a General Agreement of

Indemnity (GAI) wherein they agreed to indemnify and hold harmless Companion for any claims against the bonds. (Doc. 1, Exhibit B)  Edward signed as President, on behalf of Greaves-Walker, the "Principal/Indemnitor".

Greaves-Walker defaulted on the subcontract. As a result, general contractor LaSalle filed suit against Greaves-Walker and Companion in April 2011in the Eastern District of Michigan alleging that Greaves-Walker failed to perform its subcontract and that Companion was liable under the terms of the subcontract performance bond.  Companion settled the action for $50,000.00.  Companion alleges that it incurred $1,617.00 for the services of a construction expert to investigate and evaluate the default and attorney's fees, costs and expenses in the amount of $66,056.75 for defense of the LaSalle suit.

In March 2012, Greaves-Walker's general liability insurance carrier QBE Insurance Corporation filed a complaint for declaratory judgment against Greaves-Walker and Companion in the Southern District of Alabama.  QBE sought a declaration that it was not liable to Greaves-Walker or Companion for indemnity or a defense in the LaSalle action. Companion incurred attorney's fees, costs, and expenses of $15,603.40 to defend the QBE declaratory judgment action.

Companion filed the instant complaint against Greaves-Walker and Jo Ann and Edward Agostinelli.  In Count One, Companion plead a claim for common law indemnity in the amount of $50,000 against Greaves-Walker under the laws of Alabama; in Count Two, Companion plead a claim for statutory indemnity in the amount of $50,000 against Greaves-Walker under Ala. Code § 8-3-2 and § 8-3-5; and in Count Three, Companion plead a claim for contractual indemnity in the total amount of $133,277.15, based upon the terms of the GAI.  (Doc. 1)

All defendants executed a Waiver of the Service of Summons and their answers or other

responses were due on August 12, 2013. (Docs. 5, 6, 7) Defendants did not file an answer or otherwise respond to the complaint. Companion filed a motion for entry of default and default was entered on September 18, 2013. (Doc. 11, 13) On September 20, 2013, Companion filed a suggestion of bankruptcy as to defendant Jo Ann Agostinelli informing the Court that she had filed a petition for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Alabama, Case. No. 13-02269. (Doc. 14) This action was stayed as to Jo Ann Agostinelli. (Doc. 16) [1]

Companion then filed the instant motion for entry of default judgment as to Greaves-Walker and Edward Agostinelli. (Doc. 15) Companion seeks judgment in the amount of $133,277.15, plus interest, costs, and attorneys' fees incurred in this action. To date, Greaves-Walker and Edward Agostinelli have not appeared, answered or otherwise defended this action.

II. Subject matter jurisdiction

Companion was incorporated under the laws of South Carolina and its principal place of business is in Columbia, South Carolina. (Doc. 1) Greaves-Walker is an Alabama corporation with its principal place of business in Mobile County, Alabama. (Id). The Agostinellis are adult citizens of Baldwin County, Alabama. (Id.) The amount in controversy is $133,277.15. Therefore, the Court has subject matter jurisdiction based on the allegations of diversity of citizenship and an alleged amount in controversy in excess of the jurisdictional amount. 28 U.S.C. § 1332; *System Pipe and Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324

---

[1] On November 25, 2013, Companion filed a status report informing the Court that Jo Ann Agostinelli had been discharged from bankruptcy but Companion was "taking no further action with respect to" her. (Doc. 17) By separate order, the Court will address Companion's decision.

[2] As discussed in section C, the parties' indemnity agreement contains a choice of law provision applying Georgia law. Even under Georgia law, a common law indemnity claim gives way to the indemnity agreement. *Fidelity and Deposit Co. of Maryland v. C.E. Hall*

(5th Cir.2001) ("When entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.").

III. Personal Jurisdiction and venue

Greaves-Walker, Agostinelli and Companion agreed in the GAI that the "State of Georgia shall have jurisdiction over all legal proceedings arising out of or related to this Agreement, unless Surety, in its sole discretion, shall agree, in writing, that another State has jurisdiction." (Doc. 1, p. 16) The parties also agreed that "[v]enue of all legal proceedings arising out of or related to this Agreement shall be in Cobb County, Georgia unless Surety, in its sole discretion, shall agree, in writing, that venue shall lie in another County." (Doc. 1, p. 16) Under Georgia law, a "nonresident can consent to personal jurisdiction in Georgia if the nonresident enters into a contract that contains a Georgia forum selection clause, so long as the forum selection clause is enforceable." *Gill v. Nicol*, 2012 WL 1358490, *4 (M.D. Ga., Apr.19, 2012).

Despite their agreement, Companion filed suit in the Southern District of Alabama alleging that this Court has diversity jurisdiction and alleging that "[v]enue is proper in the Southern District as the Defendants maintain their principal place of business and are residents of Mobile and Baldwin County, Alabama." (Doc.1, p. 2) Nothing in the docket before the Court evidences a written agreement by Companion that Alabama has jurisdiction and that venue is proper in Mobile County, Alabama. However, under the forum selection clause, Companion had "sole discretion" to decide whether another state had jurisdiction and whether another county was a proper venue. Apparently, Companion has now exercised its "sole discretion" even though it did not specifically "agree, in writing" with Greaves-Walker and

4

Agostinelli.

Generally, the "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.,* 74 F. 3d 253, 260 (11th Cir. 1996). In that regard, Greaves-Walker and Agostinelli did not "plead or otherwise defend" this action, and default has been entered against them. Fed. R. Civ. P. 55(a). Because Greaves-Walker and Agostinelli did not file a timely motion to enforce these terms of the GAI or include this argument in a responsive pleading, they have waived any defense based on improper venue in this District. Fed. R. Civ. P. 12(b)(3) and (h). Generally, a "defendant in default still can challenge the validity of service of process or contest the court's exercise of personal jurisdiction over him . . . [but] once a default has been entered against him, [the defendant] is not entitled to raise any other defenses[. Thus], procedural defenses, such as a motion to dismiss for forum non conveniens . . . are lost." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863-864 (11th Cir. 2007) (citing *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453, 114 S.Ct. 981, 988 (1994)). Importantly, venue is proper in this district because Agostinelli resides here and it is the principal place of business of Greaves-Walker. 28 U.S.C. § 1391(b)(1) ("Venue in general.--A civil action may be brought in-- (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"); 28 U.S.C. § 1391(c).

IV. Personal jurisdiction

The Court must address service of process and personal jurisdiction because a default judgment would be invalid and ineffective unless the Court has personal jurisdiction over Greaves-Walker and Agostinelli. *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir.1999); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009) ("an *in personam*

judgment entered without personal jurisdiction over a defendant is void as to that defendant") (citations omitted); *Whitney Bank v. Davis-Jeffries-Hunold, Inc.*, 2012 WL 2808301, *1 (S.D. Ala. July 10, 2012). Pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses serving the summons" and therefore, may execute a waiver of service. Greaves-Walker and Agostinelli are citizens of Alabama within the judicial district of the Southern District of Alabama and subject to service under Rule 4(e) and (h). They have executed their respective Waivers. (Docs. 5, 6) Therefore, the Court has personal jurisdiction over Greaves-Walker and Agostinelli.

V. <u>Notice to Greaves-Walker and Agostinelli</u>

In addition to execution of the Waivers of service of the summons and complaint, Companion served Greaves-Walker and Agostinelli with a copy of the motion for entry of default and the motion for entry of default judgment by first class mail to Agostinelli and Greaves-Walker at the address supplied in the Waivers. (Docs. 11, 15) Thus, the Court concludes that no further notice is warranted.

VI. <u>Analysis</u>

Generally, in the Eleventh Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir.2003). Thus, "there must be strict compliance with the legal prerequisites establishing the court's power to render" the default judgment. *Varnes v. Local 91, Glass Bottle Blowers Ass'n,* 674 F.2d 1365, 1369 (11th Cir.1982). Overall, the district court "has the authority to enter default judgment for failure to prosecute ... or to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

6

Rule 55 of the Federal Rules of Civil Procedure provides that the Clerk of Court shall enter default if a party fails to plead or otherwise defend an action brought against it. Fed. R. Civ. P. 55(a). If a defendant has been defaulted for failure to appear, plead or otherwise defend, then upon request by the plaintiff, the Clerk shall enter judgment for the amount sought if it is "for a sum certain or for a sum which can by computation be made certain." Fed. R. Civ. P. 55(b)(1). Otherwise, the party entitled to default judgment must apply to the district court. Fed. R. Civ. P. 55(b)(2). Also, the district court may hold a hearing to enter or effectuate a judgment if the court needs to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

In this action, a hearing is not necessary because Companion seeks a sum certain ascertainable from the affidavit of counsel and the allegations in the complaint. *Securities and Exchange Commission v. Smyth*, 420 F.3d 1225, 1231-1232 (11th Cir. 2005) ("Judgment of default awarding cash damages could not properly be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation) (internal quotes and citations omitted); *Id*. at n.13 (noting that an "evidentiary hearing is not a per se requirement; indeed, Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone. . . . We have held that no such hearing is required where all essential evidence is already of record.").

A. Count One

Companion brings Count One of its complaint against Greaves-Walker, its principal, for common law indemnity under the laws of Alabama. However, there is a general line of cases wherein the courts have found that common law indemnity or implied theories of indemnity are not available when the parties have a specific indemnification agreement, such as the GAI that

7

was executed by Greaves-Walker. *See Ohio Cas. Ins. Co. v. Holcim (US), Inc.*, 2007 WL 2807570, *11 (S.D. Ala. Sept. 25, 2007) (collecting cases) (*rev'd on other grounds*, 589 F.3d 1361 (11th Cir. 2009)); *RBC Bank U.S. v. Holiday Isle, LLC*. 2010 WL 447403, *1 (S.D. Ala. Feb. 5, 2010) ("[A] clear majority of courts have found that a party is proscribed from recovering on an implied indemnity theory where the parties executed an express written indemnity agreement.... This Court joins the myriad authorities cited above and finds that parties' rights to common law indemnity are cut off where those parties enter into an express indemnity agreement, through which they themselves delineate when and under what circumstances an indemnification obligation will arise.") (quoting *Ohio Casualty Insurance Co.*, 2007 WL 2807570 at *11 and finding that "no construction of the complaint will support a cause of action for implied indemnity.")

In *Hanover Ins. Co. v. Hudak & Dawson Const.,* - - - F. Supp. 2d - - -, 2013 WL 2248166 (N.D. Ala. May 20, 2013), the district court stated that "[u]nder Alabama law, a surety's right of reimbursement from its principal for losses incurred on bonded obligations is established in a number of ways—by common law, contract, and statute." *Id*. at *6. However, the district court further explained that "because the parties entered into Agreements of Indemnity, [Hanover, the surety] may not rely on a common law theory of indemnification. . . [Hanover's] right to reimbursement, if any, arises under the Agreements of Indemnity." *Id.*[2]

The Court of Appeals for the Eleventh Circuit has explained that the entry of default "is

---

[2] As discussed in section C, the parties' indemnity agreement contains a choice of law provision applying Georgia law. Even under Georgia law, a common law indemnity claim gives way to the indemnity agreement. *Fidelity and Deposit Co. of Maryland v. C.E. Hall Const., Inc.,* 2012 WL 1100658, *6 -7 (S.D. Ga. Mar. 30, 2012) (granting dismissal of the common law indemnity claim on plaintiff's request because defendant conceded that it had entered into an indemnity agreement).

not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover,' but a defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact.'" *Tyco Fire & Sec., LLC*, 218 Fed. at 863 (quoting *Nishimatsu Constr. Co. v. Houston Nat'l. Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975) (citations and internal quotations omitted). However, the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *Id.* Therefore, "before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations of the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id*. (italics in original). Assuming for purpose of this motion for default judgment that Alabama law applies, Companion's claim for common law indemnity may not be a viable cause of action[3] because Companion and Greaves-Walker entered into an indemnity agreement. Accordingly, default

---

[3] This may be a distinction without a difference. In *North Alabama Electric Co-op. v. New Hope Telephone Co-op.*, 7 So.3d 342 (Ala. 2008), the Alabama Supreme Court discussed whether to address an appeal from the trial court's grant of summary judgment as to plaintiff's common-law indemnity claim, but denial as to the contractual indemnity claim. The Court stated that "claims that are mutually exclusive or that reflect alternative claims for the recovery of damages should not be split for appellate review by way of Rule 54(b)." *Id*. at 344. The Court then explained that plaintiff's "cross-claims for contractual indemnity and common-law indemnity fall squarely within this category of intertwined claims[]" because "[t]he basis for indemnity is restitution, and the concept that one person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay." *Id*. The Court held that although plaintiff "pleaded different theories of indemnification recovery, i.e., contract and common law, by definition it may still receive only one recovery for indemnification" and decided that adjudication of plaintiff's "common-law indemnity cross-claim is not appropriate for certification under Rule 54(b)." *Id.* Thus, even if default judgment were granted, Companion would "receive only one recovery for indemnification". *See also Lloyd Noland Foundation, Inc. v. Tenet Health Care Corp.*, 483 F. 3d 773, 781 (11th Cir. 2007) (finding that a Rule 54(b) certification did not make final and appealable the district court's order on summary judgment which addressed the contractual indemnification but did not address the common law indemnity claims).

judgment is DENIED as to Count One.

B. Count Two

Companion brings Count Two for statutory indemnity against Greaves-Walker pursuant to Ala. Code § 8-3-2 and § 8-3-5. Companion alleges that it paid $50,000 to settle the litigation with LaSalle in addition to costs and attorney's fees and that pursuant to the Alabama statutes it should be substituted for Greaves-Walker's creditors and subrogated to all rights and remedies against Greaves-Walker.

Ala. Code § 8-3-2 identifies certain rights of sureties who have paid debts of the principal and states that

> A surety who has paid his principal's debt is entitled to a transfer of the original and collateral security which the creditor holds; he has all the rights to realize thereon and to reimburse himself to the same extent as the creditor might have done before the surety paid him, whether paid before or after judgment; and he shall be substituted for the creditor and subrogated to all his rights and remedies; in effect, he shall be a purchaser of the debt and all its incidents.

Ala. Code § 8-3-2. Ala. Code § 8-3-5 provides that when a surety has paid a debt of the principal, the surety may "proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may be subjected by the default of the principal."

The Court is not convinced that Alabama statutory law applies. This action is before the Court on basis of diversity jurisdiction. Therefore, the Court "is required to apply the laws, . . . of the state in which the federal court sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). When there is a contract, the Alabama courts have applied the principle of *lex loci contractus* and held that the laws of the state where the contract is made will govern, unless the parties choose a specific state's laws. *Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 506 (Ala. 1991).

10

Companion and the Indemnitors including Greaves-Walker agreed that the GAI would "be interpreted and governed in all respects in accordance with the laws of the State of Georgia." (Doc. 1, p. 16) Companion's right to indemnification by Greaves-Walker for the losses it sustained in the LaSalle litigation arises out of the GAI. Accordingly, default judgment is DENIED as to Count Two of the complaint.

C. Count Three for Contractual Indemnity

Companion brings Count Three for contractual indemnity to enforce the indemnification provision of the GAI executed by Greaves-Walker and Edward Agostinelli in his individual capacity. The GAI also provides that it "shall be interpreted and governed in all respects in accordance with the laws of the State of Georgia." (Doc. 1, p. 16) Since this action is before this Court on basis of diversity jurisdiction, the Court "[i]n determining which law applies . . . must apply the choice of law rules of the forum state." *Trumpet Vine Inv., N.V. v. Union Capital Partners I, Inc*., 92 F.3d 1110, 1115 (11th Cir.1996) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941). Applying the principle of *lex loci contractus*, Alabama courts have held that the laws of the state where the contract is made will govern, unless the parties choose a specific state's laws. *Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 506 (Ala. 1991). The parties have chosen the law of the State of Georgia.

"When interpreting indemnity agreements under Georgia law, [the court must] apply the ordinary rules of contract construction." *Travelers Cas. and Sur. Co. of America v. Winmark Homes, Inc*., 518 Fed.Appx. 899, 902 (11th Cir. 2013) (citing *Anderson v. U.S. Fidelity & Guaranty Co*., 267 Ga.App. 624, 600 S.E.2d 712, 715 (2004)) (bracketed text added). "No construction is required or even permissible when the language employed by the

11

parties in the contract is plain, unambiguous and capable of only one reasonable interpretation." *Id*. (citing *Reliance Ins. Co. v. Romine*, 707 F. Supp. 550, 552 (S.D.Ga.1989) ("Under Georgia law, where the language of a contract is definite and unambiguous, a court must give it effect."), *aff'd*, 888 F.2d 1344 (11th Cir.1989) (per curiam)). Additionally, the "words" of the GAI must be construed strictly against Companion as indemnitee. *Jimenez v. Gilbane Bldg. Co.*, 303 Ga. App. 125, 693 S.E.2d 126 (2010).

In relevant part, the GAI provides as follows:

The Indemnitors agree and bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, to indemnify and save harmless Surety from and against any and all liability, loss, costs, damages or expenses of whatever nature or kind and arising out of or in any way connected with such Bonds, including but not limited to fees of attorneys and other expenses, cost and fees of investigation, adjustment of claims, procuring or attempting to procure the discharge of such bonds and attempting to recover losses or expenses from Indemnitors or third parties, whether the Surety shall have paid or incurred same, as aforesaid.

(Doc. 1, p. 14, ¶ 2). The GAI also provides that Companion would have the "right in its sole discretion to determine whether any suits or claims shall be paid, compromised, defended, prosecuted, or appealed and to pay out such sums as it deems necessary to accomplish any of those purposes and its determination as to whether such suit or claim should be settled or defended shall be binding and conclusive on Indemnitors." *Id.*

The definite and unambiguous terms of the GAI, construed against Companion, establish that Greaves-Walker and Agostinelli agreed to indemnify Companion from the loss, costs, damages and expenses including attorney's fees and other expenses, arising out of or in connection with the subcontract performance bond issued on the LaSalle project. Therefore, the Court finds that the GAI is effective and enforceable against Greaves-Walker and Agostinelli. *Kueffer Crane, etc., Inc. v. Passarella*, 247 Ga.App. 327, 330(3), 543 S.E.2d 113 (2000) ("The

test of an enforceable contract is whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon.") (citations and footnote omitted.) Moreover, the Court further finds that the facts alleged in the complaint, which are taken as true because of the default, are sufficient to establish a cause of action for breach of the indemnity agreement against Greaves-Walker and Agostinelli pursuant to Georgia law and sufficient to form a legitimate basis for an award of damages. *See Anheiser Busch, Inc. v. Philpot*, 317 F. 3d 1264, 1266 (11th Cir. 2003). Accordingly, default judgment is GRANTED in favor of Companion as to Count Three of the complaint.

D. Damages

1) Sums paid to complete the project

Companion alleges that it has "sustained a loss by virtue of having paid $50,000 for completion" of the bonded project and $1,617.00 for consultant services to investigate and evaluate the default. (Doc. 1) The GAI bound Greaves-Walker and Agostinelli to indemnify Companion for all losses and costs including fees for investigation of claims. In support, Companion provides its counsel's affidavit stating that the total claim is "$133,277.15 plus interest, costs and attorney's fees incurred in this action." (Doc. 15, p. 2)

The GAI provides that "[i]n any claim or suit hereunder, an itemized statement of aforesaid loss and expense, sworn to by an officer or agent of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of the liability hereunder of Indemnitors." (Doc. 1, p. 14, ¶ A) Companion did not provide an itemized statement sworn to by an officer or vouchers evidencing disbursement. However, Companion set forth this specific loss and consultant expense in its complaint and Companion's counsel, arguably an "agent", provided a sworn statement as to the total amount

claimed by Companion. *See Hanover*, - - - F. Supp. 2d - - -, 2013 WL 2248166, at *8 (finding that defendants agreed to accept "vouchers or *other evidence* of payment by the Surety" as "evidence of the fact and amount of such liability. . .") (italics added). The well-plead allegations of the complaint may be accepted as true due to Greaves-Walker and Agostinelli's default. Accordingly, damages are awarded in the amount of $50,000 for completion of the bonded project and $1,617.00 for the consultant's services.

2) <u>Attorney's fees, costs and other expenses incurred in the LaSalle and QBE actions</u>

Companion seeks indemnification for the attorney's fees, costs and other expenses incurred in the LaSalle ($66,056.75) and QBE litigation ($15,603.40). In that regard, Greaves-Walker and Agostinelli agreed to indemnify Companion for "any and all . . . expenses . . . including fees of attorneys" that arose out of or were connected with the subcontract performance bond. (Doc. 1, p. 14, ¶ 2) Under Georgia law, this provision binds Greaves-Walker and Agostinelli to indemnify Companion for these expenses because they were incurred as a result LaSalle's claims against the subcontract performance bond. *See Buckeye Cellulose Corp. v. Sutton Const. Co., Inc.* 907 F.2d 1090, 1095 (11th Cir.1990) (finding that the attorney's fee provision in the GIA required Sutton to indemnify its principal "for expenses, including attorney's fees incurred in recovering losses from Sutton and third parties") (citing *City of Lawrenceville v. Heard,* 194 Ga.App. 580, 391 S.E.2d 441 (1990) for the premise that "[a]ttorney's fees are recoverable when authorized by contract."). In *Rhodes v. Amwest Surety Ins., Co.,* the Georgia Court of Appeals upheld an award of attorneys fees as an "expense[] incurred as a result of claims under the surety bonds." 207 Ga. App. 441, 442, 428 S. E. 2d 581, 583 (Ga. App. 1993) ("trial court did not err in allowing the jury's consideration of evidence relating to expenses incurred for legal services in managing claims under the surety bonds.")

As evidence of the attorney's fees, costs and other expenses incurred, the Court has only the affidavit of counsel as to the total sum due and Companion's allegations in the complaint. However, as previously stated, the GAI provides that "[i]n any claim or suit hereunder, an itemized statement of aforesaid loss and expense, sworn to by an officer or agent of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of the liability hereunder of Indemnitors." (Doc. 1, p. 14, ¶ A). Thus, the Court will accept the sworn affidavit and the undisputed factual allegations in the complaint, deemed true by Greaves-Walker and Agostinelli's default, as evidence of the expenses incurred, including attorney's fees and costs, in the LaSalle and QBE litigation. Accordingly, damages are awarded in favor of Companion in the amount of $66,056.75 and $15,603.40, respectively.

3) <u>Attorney's fees, costs and expenses incurred in this litigation</u>

Companion also seeks an unspecified amount for attorney's fees, costs and expenses incurred to enforce the terms of the GAI. Companion's motion for default judgment does not further explain or support that request. In the GAI, Greaves-Walker and Edward Agostinelli agreed as follows:

> Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees hereunder, irrespective of whether any Bond loss payment has been made by Surety. If the Surety has cause to enforce the terms of this Indemnity Agreement by filing suit against Indemnitors to recover sums due under this Agreement, it is understood by the Principal and Indemnitors that the Surety may recover its further expenses of such litigation, accrued interest and 25% of such sums as attorneys' fees. Any debt accrued by the Surety, on behalf of Principal and Indemnitors will accrue interest at 12% per annum.

(Doc. 1, p. 14)

Arguably, the "sums due" that Companion seeks to recover is $133,277.15 and twenty-five (25%) of "such sum[]" would be $33,319.29. However, in regard to an award of attorney's

fees under Georgia law in this context, O.C.G.A. § 13-1-11 may apply. The statute provides, in relevant part, as follows:

> (a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to subsection (b) of this Code section and to the following provisions:
>
> (1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness;
>
> . . .
>
> (3) The holder of the note or other evidence of indebtedness or his or her attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice specified in this paragraph shall be the equivalent of such notice.

O.C.G.A. §13-1-11(a).

Under the statute, a different result would prevail, and Companion would be entitled to an attorney's fee of fifteen (15%) percent, or $19,991.58. Also, Companion would need to establish that it gave Greaves-Walker and Agostinelli the requisite statutory notice to pay Companion. O.C.G.A. 13-1-11(a)(3).

The Supreme Court of Georgia explained that "the purpose of O.C.G.A. §13-1-11 is to prevent a contractual provision for attorney's fees from constituting a penalty for failure to pay an indebtedness." *RadioShack Corp. v. Cascade Crossing II, LLC*, 282 Ga. 841, 845, 653 S.E.

2d 680, 685 (Ga. 2007) (applying statutory cap to a lease). "In its current form, the statute accomplishes this purpose in subsections (a)(1) and (2) by limiting the amount of attorney's fees, and in subsection (a)(3) by giving the debtor notice and 'an opportunity to meet his obligation without incurring additional expenses in the nature of attorney['s] fees.'" *Id*. (citations omitted). Ultimately, the court held that "the term 'evidence of indebtedness,' as used in O.C.G.A. § 13–1–11, has reference to any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money. Such a definition ... does no violence to any of the statute's specific provisions and accords well with its general purpose...." *Id*. at 845-846 (citation omitted). At least one Georgia court has indicated that where the parties have entered into an indemnity agreement attendant to surety bonds, attorney fees related to enforcement of the indemnity agreement are subject to the statute even though attorney's fees incurred as an expense are not. *Rhodes*, 207 Ga. App. at 442, 428 S.E.2d at 583.

The Court cannot rely on Greaves-Walker and Agostinelli's default to enter an award of attorney's fees, costs, and expenses in this action to enforce the indemnity agreement. *See, e.g., Tyco*, 218 Fed. Appx. at 863 (stating that a defaulted defendant "is not held to admit facts that are not well pleaded or to admit conclusions of law[]"). Thus, in order for the Court to consider whether to award the requested attorney's fees, costs and expenses, Companion is **ORDERED** to provide the Court with additional briefing on or before **December 23, 2013**.

  4. Pre-judgment interest

Companion also seeks an award of interest on the sums paid. In that regard, the GAI contains a provision that "[a]ny debt accrued by the Surety, on behalf of Principal and Indemnitors will accrue interest at 12% per annum." (Doc. 1, p. 14) Companion has not

provided the Court with any evidence, or legal argument under Georgia law, as to when the "debt accrued" such that a calculation of interest could be made. Additionally, in Georgia, prejudgment interest is only allowed on liquidated claims. *See Scovill Fasteners, Inc. v. Northern Metals, Inc.*, 303 Ga. App. 246, 252(3), 692 S.E.2d 840 (2010) (finding that the trial court did not err in awarding contract-based pre-judgment interest of eighteen (18%) percent on liquidated debt). Thus, in order for the Court to consider whether to award pre-judgment interest and to calculate same, Companion is **ORDERED** to provide the Court with additional briefing on or before **December 23, 2013**.

VII. Conclusion

For the foregoing reasons, Companion's motion for default judgment **DENIED** as to Count One and Count Two and **GRANTED** as to Three.

Final default judgment shall be entered upon resolution of Companion's claim for attorney's fees, costs and expenses in this litigation and its claim for pre-judgment interest.

The Clerk is directed to mail a copy of this order to Greaves-Walker and Edward Agostinelli at their addresses of record.

DONE and ORDERED this the 10th day of December 2013.

        **/s/ Kristi K. DuBose**
        **KRISTI K. DuBOSE**
        **UNITED STATES DISTRICT JUDGE**